UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| PETE DeSIMONE and EQUITY | ) | |
|---|---|---|
| TRUST COMPANY | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:11cv56 |
| | ) | |
| OASIS RADIO 1 CORP., | ) | |
| OASIS RADIO 2 CORP., | ) | |
| FORT WAYNE RADIO CORP., | ) | |
| and RUSSELL A. OASIS, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on a motion for remand filed by the plaintiffs, Pete DeSimone ("DeSimone") and Equity Trust Company d/b/a Sterling Trust Company ("Sterling"), on May 6, 2011. The defendants Oasis Radio 1 Corp. ("Corp. 1"), Oasis Radio 2 Corp. ("Corp. 2"), Fort Wayne Radio Corp. ("FWRC") (collectively referred to as "the Companies"), and Russell A. Oasis ("Oasis"), filed their response on July 15, 2011, to which the plaintiffs replied on July 22, 2011.

Also before the court is a motion to strike, filed by the plaintiffs on July 22, 2011. The defendants responded to the motion to strike on August 3, 2011 and the plaintiffs have declined to reply.

For the following reasons, the motion to strike will be denied and the motion to remand will be granted.

Discussion

The background facts are as follows. On January 14, 2011, DeSimone and Sterling filed

a complaint for damages against the defendants in the Allen County Superior Court. The Complaint involved allegations sounding in state law for breach of an employment contract, failure to repay promissory notes and alleged "cash call" loans, contract,+ and breach of Stock Restriction Agreement, as well as violation of the Indiana Securities Act.

On February 15, 2011, the Companies and Oasis filed a Petition for Removal. This Court denied the Petition for Removal on the grounds that the notice of removal was "too conclusory" and failed to set forth information with respect to each corporate party.

On February 23, 2011, the Companies and Oasis filed an Amended Petition for Removal based upon diversity of citizenship. The Companies and Oasis contend that the Companies are incorporated in the State of Florida and have their principal place of business in the State of Florida. The plaintiffs, however, contend that at the time of the filing of the Complaint DeSimone was a resident and citizen of the State of Indiana and the Companies had their principal places of business in the State of Indiana, and, therefore, the Companies are citizens of the State of Indiana for diversity purposes. Thus, the plaintiffs argue that complete diversity of citizenship among the parties is not present and this Court does not have jurisdiction pursuant to 28 U.S.C. § 1332, the Federal Diversity Statute.

Before reciting the particular facts underlying the disputes in the case, the court will address the motion to strike. The plaintiffs have filed a motion to strike certain paragraphs from the Affidavits submitted by the defendants. First, the plaintiffs object to portions of the Affidavit of Russell Oasis. Oasis is the president of the defendant Companies. In paragraph 4 of his Affidavit, Oasis testifies that:

> Although DeSimone managed certain aspects of the Radio
> Stations' day to day operations, all major decisions for the Radio
> Stations are and were made by me, as President and CEO, from the
> corporate offices located in Miami, Florida. Based upon my
> knowledge and experience, it is common practice in the radio
> broadcast industry for directives to emanate from and corporate
> headquarters to be located in one state and the radio stations and
> facilities to be located in another state. As an example, Clear
> Channel Broadcasting, Inc. owns radio stations across the country,
> but its directives emanate from and corporate offices are located in
> San Antonio, Texas. Cox Broadcasting Company, which operates
> stations all across the United States has it directives emanating
> from and is headquartered in New York City, but has stations
> located in various states across the country.

The plaintiffs object that Oasis is making an improper legal conclusion regarding other companies' principal places of business. Oasis responds, however, that he does indeed have personal knowledge of the principal place of business of the examples recited in his Affidavit. The plaintiffs have not challenged this response.

The plaintiffs have also objected to Paragraph 22 of Oasis's Affidavit wherein he testifies that "The nerve center of the Radio Stations is located in Miami, Florida, not in Fort Wayne, Indiana." The plaintiffs claim that Oasis is making an improper legal conclusion. However, as Oasis points out, given his position as President and CEO of the three defendant stations, he is qualified to state what he considers to be the principal place of business of his three corporations.

As Oasis has merely given his qualified opinion on relevant issues, his Affidavit will not be stricken.

The plaintiffs further object to two paragraphs of the Affidavit of Phil Becker. In Paragraph 9, Becker testifies that "Everyone working at the Radio Stations knows that Oasis is the final decision maker as to all major decisions related to the stations." The plaintiffs

3

characterize this testimony as mere speculation.  The defendants explain, however, that Becker has been employed by Oasis Radio Group for many years and was the Director of Programming at the time DeSimone was the General Manager.  Becker became the General Manage of the radio stations on January 1, 2011.  The defendants deny that the testimony is speculation and argue that in Becker's position as General Manager, currently and his prior position as Director of Programming, he has personal knowledge as to the fact that all individuals working for the radio stations knew who made the final decisions.

In Paragraph 10 of his Affidavit, Becker states that "I hold the same position as of the date of this Affidavit the DeSimone held before he left in December of 2010.  I understand that my title of General Manager does not confer on me the right to make any major decisions for the Radio Stations, just as it did not confer that right on DeSimone."  The plaintiffs contend that this testimony is speculation and conclusory.   Again, the defendants point out that Becker is entitled to state his opinion as to the scope of the authority of the General Manager of the Radio Stations as he understands the position.  This court agrees with the defendants with respect to the Becker Affidavit and it will not be stricken.

Next, the plaintiffs object to the Affidavit of Rachel Pfeiffer.  Pfeiffer is the Secretary/Sales Assistant/ Receptionist for the three radio stations.  Attached to Pfeiffer's Affidavit is a copy of a phone message log for the period of April 5, 2010 through January 11, 2011.  Pfeiffer states in her Affidavit that she maintained the phone message log which is attached to her Affidavit.   The plaintiffs argue that the phone message log is not properly authenticated and claims that "there is no way to tell whether this list accurately portrays the monthly phone message log that was allegedly kept during the regular course of business."

4

However, as the defendants point out, one of Pfeiffer's job responsibilities was to answer incoming phone calls, and thus she has personal knowledge as to the records she created in the regular course of business. Clearly, the message log is properly authenticated.

The plaintiffs also object to Exhibit A of Rebecca Fong's Affidavit. In Paragraph 2 of her Affidavit, Fong testifies that "Attached to my Affidavit as Exhibit A is a series of photographs which are of the separate entry into the office suite, Oasis's office, and my office space." Attached as exhibit A are nineteen photographs. The plaintiffs contend that these photos are not properly authenticated because there is no way to tell who took the photographs, when they were taken and where they were taken. However, it is clear that there is no doubt that Fong has personal knowledge as to the layout of the offices in Florida, and there also seems to be no doubt that the photos are accurate. Accordingly, they will not be stricken.

Finally, the plaintiffs object to portions of the Affidavit of Susan Mullen. In Paragraph 4 of her Affidavit, Mullen testifies that "Although DeSimone managed the Radio Stations, everyone employed by the Radio Stations, including myself, were well aware that all final decisions concerning the Radio Stations were made by Oasis." In Paragraph 13 of her Affidavit, Mullen testifies that "Everyone working at the Radio Stations knows that Oasis is the final decision maker as to all major decisions related to the stations." The plaintiffs argue that these statements are speculative and conclusory. Mullen has been employed as the Business Manager and the Human Resources manager for the three Radio Stations since March 2008. The defendants maintain that as an employee and member of the management team Mullen has personal knowledge as to who made what decisions related to the Radio Stations. Mullen is also qualified to give her opinion as to the common knowledge of employees under her management.

5

Accordingly, her affidavit will not be stricken.

The court will now address the motion to remand. The following additional facts are pertinent to the motion. The Companies are broadcast radio stations licensed by the Federal Communications Committee (FCC) to serve and broadcast to Fort Wayne, Indiana and surrounding communities. The Companies' radio and business operations are in the State of Indiana and have a physical address at 9604 Coldwater Road, Suite 201, Fort Wayne, Indiana 46825.

The Companies have four shareholders, DeSimone, Phil Becker, Roger Diehm, and Oasis. DeSimone was the Vice President and Market Manager and Oasis is the President. Except for Oasis, the above shareholders' offices are, or were, located in Fort Wayne, Indiana, where the shareholders directed and managed the Companies.

Prior to joining the Companies, Oasis promised DeSimone that DeSimone would run the radio stations and "have control in every way" of the Companies. (DeSimone Aff. ¶ 7; Email from Oasis to DeSimone dated Sunday, August 19, 2007 at 4:18 P.M.,Defendants' Exhibit "B".)

DeSimone became Vice President of Market Manager of the Companies on or about October 22, 2007 and held that position until his termination on or about December 31, 2010. (DeSimone Aff. ¶ 8.) DeSimone's office, the offices of shareholders, Roger Diehm and Phil Becker, and the offices of the other management personnel were located at 9604 Coldwater Road, Suite 201, Fort Wayne, Indiana 46825. (DeSimone Aff. ¶ 8.) DeSimone was the decision maker with respect to the business operations of the Companies. (DeSimone Aff. ¶ 8.) This included the day-to-day operations of the Companies such as the hiring and firing of employees, payroll, payables, sales, marketing, engineering, programming, on-air broadcasting, website

6

content management and social media content management. (DeSimone Aff. ¶ 8.) DeSimone exercised this authority in Fort Wayne, Indiana. (DeSimone Aff. ¶ 8.) While DeSimone was Vice President and Market Manager, the following management personnel reported directly to DeSimone and he had decision making authority over their respective departments:

    a.    <u>Business & Human Resources Manager</u>: Susan Mullen had an office in Fort Wayne, Indiana and made decisions regarding the payables process, payroll, the HR process regarding the hiring and firing of employees and additional employee-relation matters. Susan Mullen reported to DeSimone, they worked together day-to-day, they had a regularly scheduled weekly meeting and DeSimone had authority with respect to any decisions regarding the Companies' business and human resources decision making.

    b.    <u>Director of Programming</u>: Phil Becker had an office in Fort Wayne, Indiana and had decision making authority over the on-air personalities, i.e., disc jockeys, and oversaw the on-air staff. Phil Becker reported to DeSimone, they worked together day-to-day, they had a regularly scheduled weekly meeting and DeSimone had equal authority with respect to any decision regarding the on-air staff.

    c.    <u>Sales Manager</u>: Bart Schacht was the previous Sales Manager and had an office in Fort Wayne, Indiana. Bart Schacht had made decisions regarding the Sales Department including soliciting businesses, account list management, coaching and training sales people, and inventory pricing. Bart Schacht reported to DeSimone, they worked together day-to-day, they had a regularly scheduled weekly meeting and DeSimone had authority with respect to any decisions

regarding the Companies' Sales Department. In September of 2010, DeSimone took over the Sales Manager position in addition to the Vice President and Market Manager position. The Sales Manager position oversaw 6-7 sales personnel who worked at the Fort Wayne office and was responsible for decisions regarding the sales department including soliciting businesses, account list management, coaching and training sales people, and inventory pricing. During DeSimone's time with the Companies, he oversaw the Sales Department directly and had authority with respect to any decisions regarding the Companies' Sales Department.

d. <u>Promotion and Marketing Director</u>: Lynn Williams had an office in Fort Wayne, Indiana and was responsible for and had decision making authority regarding developing, organizing, managing, and implementing the Companies' promotions. Lynn Williams reported to DeSimone, they worked together day-today, they had a bi-weekly regularly scheduled meeting and DeSimone had shared authority -- with Phil Becker -- with respect to any decisions regarding the Companies' Promotion Department and Marketing Department

e. <u>Director of Engineering</u>: Morgan Grammer had an office in Fort Wayne, Indiana and was responsible for keeping the radio stations on the air and all IT equipment working properly. This included decision-making authority regarding maintaining broadcast automation systems for the studio and transmission systems for the transmitter facility, as well the operations of the radio towers and related transmitter equipment. Morgan Grammer reported to DeSimone, they worked

8

together day-to-day, they had a regularly scheduled weekly meeting and DeSimone had authority with respect to any decision regarding the maintenance of the Companies' broadcast engineering operations.

    f.    <u>Interactive/Digital Manager</u>: Steve Lackey had an office in Fort Wayne, Indiana and was responsible for selling integrated programs including both airtime and on-line products in partnership with other radio account managers. Steve Lackey also served as a liaison between the Sales Department and the Content Manager. Steve Lackey reported directly to DeSimone, they worked together day-to-day, they had a bi-weekly regularly scheduled meeting and DeSimone had authority with respect to any decision regarding the Companies' Interactive / Digital Department.

(DeSimone Aff. ¶ 10; the Companies' employee's list, Defendants' Exhibit "C".)

As a result of DeSimone having complete control and decision making authority, Oasis would go weeks on an average, and at times months, without checking in with DeSimone about the day-to-day operations of the Companies. (DeSimone Aff. ¶ 9.)

The only persons associated with the Companies who do not exclusively operate out of the Fort Wayne, Indiana office are Oasis, and a Controller, Rebecca Fong, who handles business matters for Oasis. (DeSimone Aff. ¶ 12; Exhibit "C".) Oasis operates out of his home in Florida located at 4840 S.W. 80th Street, Miami, Florida 33143. (DeSimone Aff. ¶ 14.) This was the same address that Oasis listed as the principal place of business for Corp. 1 and Corp. 2. (DeSimone Aff. ¶ 15.)

When DeSimone visited Oasis in Florida on business matters, Oasis never took

9

DeSimone to any corporate headquarters. (DeSimone Aff. ¶ 14.) DeSimone was unaware of any corporate headquarters in the State of Florida aside from Oasis's home. (DeSimone Aff. ¶ 14.) On April 13, 2011, Oasis changed the corporate addresses of Corp. 1 and Corp. 2 with the Florida Sectary of State. (2011 For Profit Corporation Annual Reports filed with the Florida Secretary of State for the Companies, attached hereto as Exhibit "D"; DeSimone Aff. ¶ 16.) The corporate mailing address for Corp. 1 and Corp. 2 is now 1172 South Dixie Highway, Suite 413, Coral Gables, Florida 33146-2918. (Exhibit "D"; DeSimone Aff. ¶ 17.) This new address corresponds with the corporate mailing address for FWRC. (Exhibit "D".)

Pursuant to Oasis's filings with the Florida Secretary of State documented as Exhibit "D", and the exhibits submitted by Oasis and the Companies in their Amended Petition for Removal, the Companies' principal places of business are located at 1172 South Dixie Highway, Suite 413, Coral Gables, Florida 33146-2918.

There is no physical office space, equipment, or staff at 1172 South Dixie Highway, Suite 413, Coral Gables, Florida 33146-2918. (DeSimone Aff. ¶ 19.) This address is merely a mail drop box at the UPS store located at 1172 South Dixie Highway, Coral Gables, Florida 33146-2918. (DeSimone Aff. ¶ 20.) The UPS store rents mail boxes that are referred to as "Suites" for mailing purposes. (DeSimone Aff. ¶ 20.)

In support of their motion to remand, the plaintiffs argue that Oasis and the Companies do not meet their burden of proof in establishing that the Companies' nerve center is Florida and that the Companies are foreign corporations. The plaintiffs contend that the evidence establishes that although the Companies are incorporated in Florida, their principal places of business, and nerve center, are in Fort Wayne, Indiana.

Under 28 U.S.C. § 1332(a)(1), federal district courts have original jurisdiction to hear civil actions between citizens of different states when the amount in controversy exceeds $75,000. The requirement that suits be between citizens of different states generally requires complete diversity of citizenship between all plaintiffs and all defendants. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). The burden of persuasion for establishing diversity jurisdiction is on the party asserting it. Hertz Corp. v. Friend, 130 S.Ct. 1181, 1195 (U.S. 2010).

Corporations "are deemed to be citizens of the state in which they are incorporated and of the state in which they have their principal place of business." N. Trust Co. v. Bunge Corp., 899 F.2d 591, 594 (7th Cir. 1990); 28 U.S.C. § 1332(c)(1). The term "principal place of business" refers to the place where a corporation's officers direct, control, and coordinate the corporation's activities, in other words the corporation's "nerve center". Hertz, 130 S.Ct. at 1192.

All doubts about federal diversity jurisdiction should be resolved in favor of remand to state court. 28 U.S.C. A. § 1332(a); Junk v. Terminix Intern. Co., 628 F.3d 439 (8th Cir. 2010). An order remanding a case to state court from which it was removed is not reviewable on appeal or otherwise. Hart v. Wal-mart Stores, Inc. Associates' Health and Welfare Plan, 360 F.3d 674 (7th Cir. 2004).

The parties agree that the Companies' principal place of business is where its "nerve center" is located, Illinois Bell Telephone Co., Inc. v. Global NAPs Illinois, Inc., 551 F.3d 587, 590 (7th Cir. 2008), but disagree on where the Companies' nerve center is located.

The plaintiffs argue that the evidence establishes that the Companies' only business operations are in Fort Wayne, Indiana at the Companies' office located at 9604 Coldwater Road, Suite 201, Fort Wayne, Indiana 46825. According to the plaintiffs, the evidence establishes that

11

when DeSimone was the Vice President and Market Manager, he had complete control and decision making authority over the Companies including the hiring and firing of employees, payroll, payables, sales, marketing, engineering, programming, on-air broadcasting, website content management and social media content management.

Additionally, the Companies' management personnel located at the Fort Wayne, Indiana office hold a wide range of decision making authority. Management personnel with decision making authority at the Fort Wayne, Indiana office include the General Manager, the Business & HR Manager, the Director of Programming, the Program Directors, the Sales Manager, the Promotion and Marketing Director, the Director of Engineering, and the Interactive/Digital Manager.

Aside from being incorporated in the State of Florida, the only connection the Companies have to the State of Florida is Oasis and his controller, Rebecca Fong. Oasis operates business matters out of his home located at 4840 S.W. 80th Street, Miami, Florida 33143 and had listed the principal places of business for Corp. 1 and Corp. 2 at that address.

Recently, however, Oasis changed the corporate address for Corp. 1 and Corp. 2 to 1172 South Dixie Highway, Suite 413, Coral Gables, Florida 33146-2918. This corresponds to the corporate address for FWRC.

Pursuant to the 2011 For Profit Corporation Annual Reports filed with the Florida Secretary of State by Oasis, the current principal places of business for Corp. 1, Corp. 2, and FWRC is 1172 South Dixie Highway, Suite 413, Coral Gables, Florida 33146-2918. However, this is merely a mail drop box at a UPS store and the Companies have no office space, equipment, or staff located at this address.

Under Hertz, when a corporation does not actually have a headquarters and is merely a "mail drop box" or "a bare office with a computer" the court "should instead take as the 'nerve center' the place of actual direction, control, and coordination . . .". Id. at 1195. By no stretch of the imagination could this mail drop box be considered the Companies' principal places of business for diversity purposes pursuant to Hertz.

The plaintiffs point out that the Companies' only business operations are in the State of Indiana and argue that the Companies cannot show a possible danger of local prejudice against outsiders justifying removal.

The principal purpose of diversity jurisdiction is to guarantee a non-citizen party fair trial by limiting the potential effects of local prejudice against outsiders. Columbia Gas Transmission Corp. v. Burdette Realty Imp., Inc., 102 F.Supp.2d 673, 676 (S.D.W.Va. 2000) (citing 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3625 (2d ed. 1984)). Thus, when possible, courts should typically look to where "the corporation would be most visible, would have the most contact with the public, and would consider its home." AFA Enters., Inc. v. American States Ins. Co., 842 F.Supp. 902, 908 (S.D.W.Va. 1994). In that location, the corporation is less likely to face local prejudice as an outsider. Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1094 (9th Cir. 1990).

The evidence shows that nearly all of the Companies' personnel are located in the State of Indiana. Moreover, the Companies' only business operations are in the State of Indiana and the Companies hold themselves out as local radio stations targeting Fort Wayne, Indiana and surrounding communities. The Companies' websites list a business address in Fort Wayne, Indiana and there is no mention of the Companies having a corporate headquarters, or any

connection for that matter, to the State of Florida.

In Columbia Gas Transmission Corp., Columbia Gas argued that its nerve center should be the State of Virginia, the state of incorporation and where the executive offices were located. Id. at 678. However, after reviewing all of the evidence, the court held that Columbia Gas had most of its business operations in the State of West Virginia and that Columbia Gas had routinely advertised itself to the public as being a local company in the State of West Virginia. Id. The court held that Columbia Gas's nerve center was in the State of West Virginia. Id. at 679.

Although the Columbia Gas case is pre-Hertz, the underlying principle regarding local prejudice to outsiders is instructive. Like Columbia Gas, the Companies essentially contend that the state of incorporation should be sufficient for diversity purposes.

However, unlike Columbia Gas which actually had business operations in the same state it was incorporated, the Companies have no business operations or contacts with the State of Florida aside from Oasis operating out of his home and the mail drop box at the UPS store. Also like Columbia Gas, the Companies routinely hold themselves out as local businesses. Thus, like Columbia Gas, the plaintiffs herein contend that this Court should find that there is no danger of local prejudice against any outsiders because the Companies are sufficiently local.

The defendants continue to assert that the "nerve center" of the Companies is in Florida, primarily because that is where Oasis, the President and CEO of the Companies, resides and oversees the Companies. The defendants portray Oasis as the "brain" of the three corporations. They claim that Oasis directs all corporate activities and makes all fundamental business decisions associated with the Companies from his residence in Miami. The defendants further claim that all financial matters, such as payroll and income tax returns, are handled in Miami.

14

The defendants claim that these factors demonstrate that Miami, Florida is the nerve center and argue that the fact that the Radio Stations "happen to broadcast" in Indiana is not determinative.

It is clear to this court that the Companies did more than "happen to broadcast" in Indiana. They were doing a substantial business in Indiana. They held themselves out as a local business. They had offices, and employees, and managers in Indiana. The entire substance of the business of the Companies is in Indiana. While many details were taken care of in Florida, and Oasis maintained governing control over the Companies by virtue of his position, it is clear that the day-to-day operations of the Companies was taken care of by the employees and managers in Indiana.

Accordingly, the court finds that diversity jurisdiction does not exist and the motion to remand will be granted.

## Conclusion

On the basis of the foregoing the plaintiff's motion to remand [DE 18] is hereby GRANTED, and the motion to strike [DE 24] is hereby DENIED.

This matter is hereby REMANDED TO ALLEN SUPERIOR COURT.

Entered: August 29, 2011.

                                                    s/ William C. Lee
                                                    William C. Lee, Judge
                                                    United States District Court